UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STANT MANUFACTURING INC., | ) | |
|     Plaintiff, | ) | |
| | ) | |
|   vs. | ) | 1:02-cv-1653 RLY-WTL |
| | ) | |
| GERDES GmbH, | ) | |
|     Defendant. | ) | |

**ENTRY ON (1) GERDES' MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE ASSERTED CLAIMS OF U.S. PATENTS 5,480,055 AND 5,794,806 ARE INVALID UNDER 35 U.S.C. 102(b) BECAUSE OF STANT'S OFFER TO SELL ITS MODEL AA3 FUEL CAP NO LATER THAN APRIL 26, 1993 AND ON (2) GERDES' MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE ASSERTED CLAIMS OF U.S. PATENTS 5,480,055 AND 5,794,806 COVER STANT'S MODEL AA2 FUEL CAP**

Plaintiff Stant Manufacturing, Inc. ("Stant") filed this case against Defendant Gerdes, GmbH ("Gerdes") on October 28, 2002, alleging that Gerdes' products infringe several patents held by Stant: U.S. Patent Nos. 4,678,097 B1 (the reexamined "'097 patent"); 5,449,086 (the "'086 patent"); 5,480,055 (the "'055 patent"); and 5,794,806 (the "'806 patent").[1] Each of these patents relates to fuel caps used on vehicles.

This Entry addresses: (1) Gerdes' Motion for Partial Summary Judgment that the Asserted Claims of U.S. Patents 5,480,055 and 5,794,806 are Invalid Under 35 U.S.C. 102(b) Because of Stant's Offer to Sell its Model AA3 Fuel Cap No Later than April 26,

---

[1] Copies of the patents at issue are found as Exhibits 2-5 of the Appendix to Stant's Brief in Support of its Motion for Partial Summary Judgment of Non-Invalidity Over Certain References.

1

1993 (Docket #193); and (2) Gerdes' Motion for Partial Summary Judgment that the Asserted Claims of U.S. Patents 5,480,055 and 5,794,806 Cover Stant's Model AA2 Fuel Cap (Docket #194). For the following reasons, the two motions are **denied**.

**I.      Summary Judgment Standard**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is outcome determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine "only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *National Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 265 (7th Cir. 1996). The moving party bears the burden of demonstrating the "absence of evidence on an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party may not, however, simply rest on the pleadings, but must demonstrate by specific factual allegations that a genuine issue of material fact exists for trial. *National Soffit & Escutcheons, Inc.*, 98 F.3d at 265.

**II.     Background**

In the motions before the court, Gerdes makes four related arguments. First,

Gerdes argues that claims 1, 2, 10, 13, and 14 of the '055 patent and claims 32, 38, 39, and 41 of the '806 patent cover Stant's model AA3 fuel cap. (Gerdes Brief in Support of its Motion for Summary Judgment that the Asserted Claims of U.S. Patents 5,480,055 and 5,794,806 are Invalid Under 35 U.S.C. 102(b) Because of Stant's Offer to Sell its Model AA3 Fuel Cap No Later than April 26, 1993 (docket #193) ("Gerdes' Brief") at 1). Second, Gerdes claims that "[u]nder the requirements of *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55 (1998), Stant's AA3 fuel cap was the subject of a commercial offer for sale and was ready for patenting no later than April 26, 1993." *Id*. Gerdes then asks the court to consider "whether Stant's AA2 cap was the subject of a commercial offer for sale and was ready for patenting no later than January 4, 1993." *Id*. Finally, Gerdes' fourth argument is that "the asserted claims of the '055 and '806 patents cover Stant's AA2 fuel cap." *Id*.

Gerdes' first three arguments arise within its Motion for Partial Summary Judgment that the Asserted Claims of U.S. Patents 5,480,055 and 5,794,806 are Invalid Under 35 U.S.C. 102(b) Because of Stant's Offer to Sell its Model AA3 Fuel Cap No Later than April 26, 1993. These three issues relate to the on-sale bar found within 35 U.S.C. § 102(b), which states that "[a] person shall be entitled to a patent unless . . . the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ." As such, the "critical date" for a patent is the date exactly one year prior to the date that the patent application was filed.

According to Gerdes, Stant offered the AA2 and the AA3 caps for commercial sale to Ford prior to the critical dates for the '055 and '806 patents. Stant counters that the AA2 and AA3 caps were offered only for experimental – not commercial – sale prior to the critical dates.

Gerdes' fourth and final argument arises within its Motion for Partial Summary Judgment that the Asserted Claims of U.S. Patents 5,480,055 and 5,794,806 Cover Stant's Model AA2 Fuel Cap. Therein Gerdes claims that, based on the doctrine of collateral estoppel and on an analysis of equivalence, the '055 and '806 patents cover the AA2 caps.

### III.  Facts

The following facts are considered in the light most favorable to Stant.[2]

### A.  The '055 and '806 Patents

1. The application that resulted in the '055 patent was filed on May 6, 1994. (Ex. 4).

2. When considering the on-sale bar, pursuant to 35 U.S.C. § 102(b), the "critical date" for claims 1, 2, 10, 13, and 14 of the '055 patent is May 6, 1993. (Ex. 4).

3. The application that resulted in the '806 patent was filed on December 4, 1995. (Ex. 5).

4. The effective filing date of claim 32 of the '806 patent is May 6, 1994, because the

---

[2] In briefing these motions, the parties have disputed whether and in what way the court should use the International Trade Commission's records relating to the issues herein. The court has reviewed the Commission Investigative Staff's Pre-Hearing Statement on Temporary Relief. That document addresses proceedings with a different standard than this court's standard for summary judgment; therefore, this court will not rely upon the Commission's Statement.

'806 patent resulted from a continuation-in-part application of the '055 patent and because the subject matter of claim 32 is fully disclosed in the '055 patent. (Ex. 5).

5. Pursuant to 35 U.S.C. § 102(b), the "critical date" for claim 32 of the '806 patent is May 6, 1993.

6. In the light most favorable to Stant, the effective filing date of claims 38, 39, and 41 of the '806 patent is May 6, 1994. (Ex. 5).

7. For summary judgment purposes, the "critical date" for claims 38, 39, and 41 of the '806 patent is May 6, 1993.[3]

**B.   The AA2 Cap**

8. Stant's 33950-A fuel cap design is illustrated in Stant's drawing dated August 4, 1992, revised on August 18, 1992. Stant's part number 33950-A corresponds to Ford part number F5DC-9030-AA2 (the "AA2"). (Ex. 674).

9. On September 1, 1992, Stant told Ford that for $177,000, Stant "can develop prototype tooling to produce a new fuel cap that will meet the requirements as defined by the attached S.D.S. dated July 21, 1992 and drawing 33950A Revision A dated August 18, 1992." (Ex. 261 (referring to Ex. 674)).

---

[3] Gerdes argues that the effective filing date of claims 38, 39, and 41 of the '806 patent is December 4, 1995, because the structure required by claim 38 of the '806 does not appear in the '055 patent. Stant has raised a question of fact regarding whether the '055 patent discloses claim 38 of the '806. *See* Sur-Surreply (Docket #277). At trial, Stant will have to establish its entitlement to the earlier filing date. In *Tesma*, Stant conceded that the AA3 prototype (from the '055 patent) was offered for sale in September 1993, so if the December 4, 1995 filing date applies, the on-sale bar also applies.

10. On September 3, 1992, Stant told Ford that the parts produced by the quoted prototype tooling for the AA2 would be "production like parts" and that the "prototype cavities could be phased into production usage if no engineering changes occur." (Ex. 401).

11. On November 9, 1992, Ford authorized Stant to purchase $126,890 of tooling to manufacture twenty "9030-new 1/8 turn fuel caps" that Stant would sell to Ford at $50 per cap. (Ex. 358).

12. On December 16, 1992, Stant shipped two prototypes of the AA2 design to Ford, for which Stant received payment of $50 per cap and the price of the tooling. (Ex. 405).

13. On January 4, 1993, Stant responded to a Ford Request for Quotation, in which Stant quoted $1,856,440 for production tooling and provided other price and production terms. (Ex. 361; Ex. 281).

**C.  The AA3 Cap**

14. Stant's 34060-A fuel cap, the AA3 design, includes all of the limitations of claims 1, 2, 10, 13, and 14 of the '055 patent and all of the limitations of claims 32, 38, 39, and 41 of the '806 patent. (Exs. 4, 5, 670, 672, 675).

15. No later than February 17, 1993, Stant had a blueprint design for the AA3 cap. (Ex. 675). However, the design was not completed on February 17, 1993, as shown by further work done on the AA3 cap. (Stant's Combined Brief in Opposition to Gerdes' Motions at 6-7).

16. By March 31, 1993, Ford had agreed to pay Stant $57,530 for Stant's revisions to the AA2 "production intent tooling," so that Stant could manufacture the AA3. Stant, at Ford's request, began to fabricate fifty AA3 caps priced at $72 each. (Ex. 409).

17. On April 13, 1993, Ford sent Stant a change order, calling for a "variance from the F5DC-9030-AA2," and authorizing Stant to proceed with the change with Stant's initial expenditures not to exceed $50,000. On April 26, 1993, Stant executed the change order and stated that Stant was immediately dropping the AA2 and switching to the AA3. (Ex. 373).

18. On May 4, 1993, Stant provided Ford with three of the fifty AA3 prototype caps. (Ex. 411). Based on Ford's favorable reaction, Stant believed that the AA3 was a "home run." (Ex. 413).

## IV. Analysis

**A. Gerdes' argument that claims 1, 2, 10, 13, and 14 of the '055 patent and claims 32, 38, 39, and 41 of the '806 patent cover Stant's model AA3 fuel cap**

Stant has not disputed that the AA3 design includes the limitations of claims 1, 2, 10, 13, and 14 of the '055 patent as well as claims 32, 38, 39, and 41 of the '806 patent. (*See* Stant's Combined Brief in Opposition to Gerdes' Motions for Summary Judgment at 27). Therefore, the court accepts Gerdes' first argument, which is that the AA3 design

includes the aforementioned limitations.

**B.    Gerdes' argument that under *Pfaff v. Wells*, Stant's AA3 fuel cap was the subject of a commercial offer for sale and was ready for patenting no later than April 26, 1993**

Gerdes' second claim is that the AA3 cap was the subject of a commercial offer for sale and ready for patenting no later that April 26, 1993, several days before the May 6, 1993 critical date for the '055 and '806 patents. Stant responds that the AA3 cap was only in experimental use and not offered for commercial sale prior to the critical date.

The '055 patent was in suit in the 1997 case of *Stant v. Tesma International, Inc.*, Case No. IP 96-1325-C-D/F (S.D. Ind.) (Dillin, J.). In that case, which eventually settled following the verdict, the jury found that Stant's dealings with Ford fell within the "experimental use" exception to the on-sale bar. Between the *Tesma* verdict and the case now before the court, the 1998 holding in *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55 (1998), changed the experimental use exception. (*See* Gerdes' Brief at 3-8).

In *Pfaff*, the Supreme Court determined what circumstances can trigger the on-sale bar prior to an invention's reduction to practice. 525 U.S. at 60. In so doing, the Court unanimously rejected the Federal Circuit's multi-factor, totality of the circumstances test. 525 U.S. at 66 n.11. Instead, the Court adopted a two-prong test: "First, the product must be the subject of a commercial offer for sale . . . Second, the invention must be ready for patenting." 525 U.S. at 67. An invention can be shown to be ready for patenting either "by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that

were sufficiently specific to enable a person skilled in the art to practice the invention." 525 U.S. at 67-68. The parties do not dispute that the caps in question were ready for patenting prior to the critical date, so the second prong is met. (*See* Stant's Combined Brief in Opposition at 9).

The disputed first prong of the *Pfaff* test "involves an assessment of whether the circumstances surrounding the transaction show that the transaction was not primarily for the purposes of experimentation . . . If there is adequate proof that a device was sold primarily for experimentation, the first prong of *Pfaff* would not be met . . . ." *Allen Engineering Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1352-53 (Fed. Cir. 2002) (citing *EZ Dock, Inc. v. Schafer Systems, Inc.*, 276 F.3d 1347, 1352 (Fed. Cir. 2002)). In determining whether a sale was made for the purpose of experimentation, the court considers many factors, including the necessity for testing, whether payment was made, the nature of the testing, the relationship between the tester and the inventor, and the degree of commercial exploitation during testing. *Allen Engineering Corp.*, 299 F.3d at 1353 (listing 13 factors to consider) (citing *EZ Dock*, 276 F.3d at 1357, 61 (Linn, J., concurring)); *see also Electromotive Div. of Gen. Motors Corp. v. Transp. Sys. Div. of Gen. Elec. Co.*, 2005 WL 1774430 (Fed. Cir. 2005) (noting that the 13 *Allen* factors are "not exhaustive"). In light of these factors, Stant has raised a genuine issue of material fact as to whether the caps offered for sale prior to May 6, 1993 were offered primarily

for the purpose of experimentation.[4]

More specifically, on April 13, 1993, Ford sent Stant a change order, calling for a variance from the AA2 cap and authorizing Stant to proceed with the change, with Stant's initial expenditures not to exceed $50,000. (Ex. 373). The change order also indicated that the piece price for the AA3 would be the same as the AA2, $2.85. (*Id.*) On April 26, 1993, Stant executed the change order and stated that Stant was immediately dropping the AA2 and switching to the AA3. (Ex. 373 attachment).

Ford offered to pay Stant the low-volume price of $72 each for 50 prototypical AA3 caps; Stant delivered three of the prototypes to Ford on May 4, 1993. (Exs. 411, 413). After May 4, 1993, various AA3 prototypes were used by Ford in crash tests, the results of which were then reported back to Stant. On June 6, 1993, Ford sent Stant another change order, calling for a variance increasing the piece price for the AA3 to $5.15 per cap. (Ex. 375). The June 6 variance also specified that the expected production volume for the AA3 was 400,000 in 1995, with significant increases in volume for 1996 and 1997. (*Id.*) Ultimately, the AA2 and AA3 caps were never produced for public use.

---

[4] The thirteen factors discussed in *Allen* are: "(1) the necessity for public testing, (2) the amount of control over the experiment retained by the inventor, (3) the nature of the invention, (4) the length of the test period, (5) whether payment was made, (6) whether there was a secrecy obligation, (7) whether records of the experiment were kept, (8) who conducted the experiment, . . . (9) the degree of commercial exploitation during testing[,] . . . (10) whether the invention reasonably requires evaluation under actual conditions of use, (11) whether testing was systematically performed, (12) whether the inventor continually monitored the invention during testing, and (13) the nature of contacts made with potential customers." 299 F.3d at 1353.

Given this factual background, a reasonable jury could find that Stant's primary purpose at the time of the sale of the prototypes was to conduct experimentation. *See Allen Eng'g Corp.*, 299 F.3d at 1354. Gerdes' evidence that Stant generated a pricing estimate for commercial production of the AA3 cap prior to the critical dates for the '055 and '806 patents will weigh against Stant at trial, but those estimates are inconclusive at this stage. (Ex. 361). *Pfaff* tells us that "an inventor who seeks to perfect his discovery may conduct extensive testing without losing his right to obtain a patent for his invention . . . ." 525 U.S. at 64; *see also Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306 (Fed. Cir. 2005) (a reasonable jury could find that the on-sale bar was not violated when an inventor of car parts gave free prototypes of his invention to various mechanics for testing and feedback).

**C.     Gerdes' argument that Stant's AA2 cap was the subject of a commercial offer for sale and was ready for patenting no later than January 4, 1993.**

For the same reasons discussed above, the court finds that Stant has raised an issue of fact regarding whether the AA2 was the subject of a commercial offer for sale prior to the critical dates for the '055 and '806 patents. *See Pfaff*, 525 U.S. at 64; *see also*, *Allen Eng'g Corp.*, 299 F.3d at 1254. Gerdes has presented evidence that Stant generated a pricing estimate for mass production of the AA2 cap prior to the critical dates for the '055 and '806 patent. (Ex. 361). This evidence is not conclusive, however, because "[t]he on-sale bar was not intended to prevent discussions between potential inventor-suppliers and customers concerning inventions not yet completed." *Robotic Vision Sys.*,

*Inc. v. View Eng'g, Inc.*, 112 F.3d 1163, 1168 (Fed. Cir. 1997) (reversing summary judgment of invalidity based on the on-sale bar).

A reasonable jury could construe the price quotes at issue as a prospective discussion regarding an incomplete invention rather than an invalidating offer for commercial sale. Therefore, the court finds that Stant has raised a genuine issue of material fact regarding whether any offer for commercial sale of the AA2 cap took place prior to the critical dates for the '055 and '806 patents.

**D.    Gerdes' argument that the asserted claims of the '055 and '806 patents cover Stant's AA2 fuel cap**

**1.    Introduction**

The final issue before the court today is Gerdes' argument that the asserted claims of the '055 and '806 patents cover Stant's AA2 fuel cap.

In its opening motion and brief, Gerdes argued that Judge Dillin's 1997 summary judgment Entry in *Tesma* held that the claims of the '055 and '806 patents cover the AA2 cap and that his decision was binding under the doctrine of collateral estoppel.[5] (Gerdes' Motion for Partial Summary Judgment that the Asserted Claims of U.S. Patent Numbers 5,480,055 and 5,794,806 Cover Stant's Model AA2 Fuel Cap and Supporting Brief at 2; Ex. 670 (Judge Dillin's May 28, 1997 Entry on summary judgment)). In its Response, Stant argued that Judge Dillin's Entry in *Tesma* in fact did not decide whether the AA2

---

[5] The '806 patent was not at issue in *Tesma*, but because the '806 patent resulted from a continuation-in-part application of the '055 patent, collateral estoppel of issues relating to the '055 patent implicates the '806 patent as well.

prototype is covered by the '055 patent, a point which Gerdes has since conceded. (*See* Ex. 670 at 10 (Judge Dillon's Entry finding that "[e]ven *if* this Court were to find that the AA2 prototype reads on the '055 patent, the exchange between Stant and Ford raises the same issue of experimental use as with the AA3 prototype . . .") (emphasis added); Gerdes' Reply Brief in Support of its Partial Summary Judgment Motion that the Asserted Claims of U.S. Patent Numbers 5,480,055 and 5,794,806 Cover Stant's Model AA2 Fuel Cap ("Gerdes' Reply") at 9).

What remains of Gerdes' collateral estoppel argument is its claim that Judge Dillin's summary judgment opinion taken together with the *Tesma* jury verdict establish that Stant "'had a full and fair opportunity to litigate' the structural equivalents of Tesma's cap." (Gerdes' Reply at 9 (quoting *Coleman v. Commissioner of Internal Revenue*, 16 F.3d 821, 830 (7th Cir. 1994)). Ultimately, Gerdes is arguing that "[t]he *Tesma* verdict and Stant's infringement allegations establish structural equivalents that result in the asserted claims [of the '055 and '806 patents] covering the AA2." (*Id*. at 20).

### 2. Collateral Estoppel

The doctrine of collateral estoppel limits patent owners to "one full and fair opportunity for judicial resolution of the same [invalidity] issue." *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328 (1971). The application of collateral estoppel, or lack thereof, is determined pursuant to Seventh Circuit precedent rather than the Federal Circuit precedent that is generally controlling in

patent cases. *Bayer AG v. Biovail Corp.*, 279 F.3d 1340, 1345 (Fed. Cir. 2002).

In the Seventh Circuit, three conditions must be met before collateral estoppel will prevent a patentee from being able to litigate an issue: "First, there must be a final judgment in the first action . . . Second, the issue implicated in the second suit must be identical in all respects to the issue decided in the first suit . . . Third, the issue must have been actually litigated and have been essential to the prior decision." *Coleman v. Commissioner of Internal Revenue*, 16 F.3d 821, 830 (7th Cir. 1994).[6] Collateral estoppel is an affirmative defense, so Gerdes bears the burden of showing that these factors were met. Fed. R. Civ. P. 8(c).

In the case at bar, Gerdes cannot establish the third requirement outlined above, that "the issue must have been actually litigated and have been essential to the prior decision." The jury could have followed the same pattern of reasoning reflected in Judge Dillin's summary judgment entry: a finding that the experimental use exception applied would make it unnecessary to determine whether the AA2 was covered by claims of the '055. As such, a finding that the '055 patent covers the AA2 was not essential to the *Tesma* verdict, and, thus, collateral estoppel cannot be invoked.

### 3. Equivalents

In its reply brief, Gerdes emphasizes its contention that the AA2 is structurally

---

[6] Additionally, the party that is estopped must have been represented in the prior action. *Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*, 294 F.3d 1330, 1333 (Fed. Cir. 2002) (citing *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979)). There is no question that Stant was represented in its litigation against *Tesma*.

equivalent to the '806 and '055 claims (as defined in this court's Entry on Claim Construction). According to Gerdes, Stant's claim that Gerdes' cap infringes the '806 and '055 patents necessarily implies that the '806 and '055 patents cover the AA2 prototype – because the AA2 prototype is more like the '806 and '055 patents than the Gerdes cap is. The questions presented by the equivalency issue are questions of fact for the jury, inappropriate for summary judgment.

### V.     Conclusion

Stant has raised a genuine issue of material fact regarding whether the on-sale bar invalidates the '055 and '806 patents. Therefore, Gerdes' Motion for Partial Summary Judgment that the Asserted Claims of U.S. Patent Numbers 5,480,055 and 5,794,806 are Invalid Under 35 U.S.C. § 102(b) Because of Stant's Offer to Sell Its Model AA3 Fuel Cap No Later than April 26, 1993 is **denied**. Likewise, Gerdes' Motion for Partial Summary Judgment that the Asserted Claims of U.S. Patent Numbers 5,480,055 and 5,794,806 Cover Stant's Model AA2 Fuel Cap is **denied**.


Dated:  February 3, 2006.
                                              RICHARD L. YOUNG, JUDGE
                                              United States District Court
                                              Southern District of Indiana


Electronic copies to:

Samuel L. Alberstadt
FULWIDER PATTON LEE & UTECHT, LLP
salberstadt@fulpat.com

Michael D. Beck
MAGINOT MOORE & BOWMAN
mdbeck@maginot.com

Andrew B. Dzeguze
BARNES & THORNBURG
andrew.dzeguze@btlaw.com

Michael S. Elkind
FULWIDER PATTON LEE & UTECHT
melkind@fulpat.com

Helen K. Geib
BARNES & THORNBURG
helen.geib@btlaw.com

Spencer Patrick Goodson
BARNES & THORNBURG
sgoodson@btlaw.com

Paul B. Hunt
BARNES & THORNBURG
paul.hunt@btlaw.com

Donald E. Knebel
BARNES & THORNBURG
donald.knebel@btlaw.com

David J. Pitman
FULWIDER PATTON LEE & UTECHT LLP
dpitman@fulpat.com

David S. Sarisky
FULWIDER PATTON LEE & UTECH, LLP
dsarisky@fulpat.com

Lynn C. Tyler
BARNES & THORNBURG
lynn.tyler@btlaw.com